**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 07-80061-CIV-HURLEY/HOPKINS**

**MERIDIAN VENTURES, LLC,**

      **Plaintiff,**

**vs.**

**ONE NORTH OCEAN, LLC,**

      **Defendant.**

_____/

**ORDER GRANTING PLAINTIFF'S CROSS-MOTION**
**FOR PARTIAL SUMMARY JUDGMENT AND DENYING**
**DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.*, was originally enacted in 1968 to protect relatively unsophisticated land buyers from the potentially sharp dealing of professional developers. Its provisions generally require developers of large, multi-lot residential properties to make various disclosures about the lots available for sale, and to include certain terms in sales contracts. The Act also provides some fairly unusual remedies for violations, including under certain circumstances a two-year buyer's right of revocation. *See* 15 U.S.C. § 1703(c)-(d).

The purpose of the statute is essentially "to insure that a buyer, prior to pruchasing certain kinds of real estate, is informed of facts which will enable him to make an informed decision about purchasing the property." *Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98, 99 (5th Cir. 1978). The Act is a consumer-protection statute, and "should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes." *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir. 1975).

With those principles of construction in the background, the court turns to defendant's motion for partial summary judgment [DE # 10] and plaintiff's cross-motion for partial summary judgment [DE # 17]. For the reasons explained below, the court will grant plaintiff's motion and deny defendant's cross-motion.

## BACKGROUND

On February 8, 2005, plaintiff Meridian Ventures, LLC ("Meridian") entered into a contract to purchase a condominium unit at "Meridian at One North Ocean" in Boca Raton, Florida from defendant One North Ocean, LLC ("One North Ocean"). Meridian paid One North Ocean a $350,000 deposit. On January 10, 2007, Meridian sent a letter to One North Ocean claiming that the contract was revocable under the Interstate Land Sales Full Disclosure Act for having failed to fully comply with the Act's disclosure provisions, and demanding that One North Ocean refund Meridian's deposit. One North Ocean refused.

Meridian filed suit in this court on January 22, 2007, seeking a refund of its deposit and reasonable attorneys' fees. One North Ocean filed its answer, including a counterclaim for breach of contract, on February 26, 2007. On July 9, 2007, One North Ocean filed a motion for partial summary judgment on Meridian's claim [DE # 10]. On July 27, 2007, Meridian filed a cross-motion for partial summary judgment [DE # 17].

## JURISDICTION

This court has federal question jurisdiction over this action pursuant to 15 U.S.C. § 1719 because the plaintiff's complaint raises a claim under 15 U.S.C. § 1703.

Venue is proper in this district pursuant to 15 U.S.C. § 1719 because the defendant transacts business in the Southern District of Florida.

DISCUSSION

### A.      Standard of Review

Summary judgment is warranted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). In determining whether summary judgment is appropriate, the facts and inferences from the record are viewed in the light most favorable to the non-moving party, and the burden is placed on the moving party to establish both the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Matsuhita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The non-moving party, however, bears the burden of coming forward with evidence of each essential element of his claims, such that a reasonable jury could return a verdict in his favor. *See Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002). In response to a properly supported motion for summary judgment, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the non-movant's position is insufficient; there must be evidence on the basis of which a jury could reasonably find for the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). A complete failure of proof concerning an essential element of the non-movant's case necessarily renders all other

3

facts immaterial and entitles the moving party to summary judgment.  *See Celotex*, 477 U.S. at 323; *Gonzalez v. Lee County Housing Authority*, 161 F.3d 1290, 1294 (11th Cir. 1998).

### B.   Cross-motions for Partial Summary Judgment

#### 1.   Statutory History and Structure

In 1968, Congress enacted the Interstate Land Sales Full Disclosure Act.  *See* Pub. L. 90-448, 82 Stat. 590.  Because the Act is principally targeted at large developments,[1] some developments are exempt from the Act's requirements.  For example, the original 1968 version of the statute included, among other exemptions, an exemption for developments with fewer than fifty lots.[2]  *Id.*  Developments receiving these exemptions were excused entirely from the obligations imposed by the Act.  *Id.*  The Act was next amended in 1974, when a minor change was made, not relevant to the instant motions.  *See* Pub. L. 93-383.

In 1978, Congress amended the Act again.  *See* Pub. L. 95-557, 92 Stat. 2080.  In the 1978 amendment, Congress added a new category of developments that would receive an exemption from some, but not all, of the Act's requirements.  The developments receiving this limited exemption were excused from making the disclosures required by 15 U.S.C. §§ 1704-1707 (generally requiring certain disclosures about the subdivision as a whole), but were not excused from the requirements of the remainder of the statute, notably § 1703.

---

[1]  The development in this case is a condominium building, and the Eleventh Circuit has held that condominiums qualify as "lots," and so are subject to the Act.  *See Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1449 (11th Cir. 1985).

[2]  Both the original and current versions of the statute included other exemptions not relevant to the instant motions, such as for lots sold by the government and cemetery lots.  *See* 15 U.S.C. § 1702(a).

Finally, in 1979, Congress overhauled practically the entire statute, rewriting it into its current form.  *See* Pub. L. 96-153, 93 Stat. 1101.  The 1979 amendment expanded both the list of categories of developments that would receive the limited exemption, and the list of requirements from which those developments would be excused.  Developments receiving the limited exemption were now not only excused from complying with §§ 1704-1707, but the newly-rewritten 15 U.S.C. § 1703(a)(1) as well.  The 1979 amendment also added several subsections to 15 U.S.C. § 1703, notably § 1703(d), which requires certain terms to be included in non-exempt sales contracts.  The statute has not been since amended.

The court thus turns to the statute as it is written today.  The exemptions are contained in what is now 15 U.S.C. § 1702, and they break down into two categories.  Section 1702(a) confers a total exemption from all of the Act's requirements on, *inter alia*, lots in developments with less than twenty-five lots:

> (a) Sale or lease of lots generally
>
> Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provisions of this chapter shall not apply to--
>
>> (1) the sale or lease of lots in a subdivision containing less than twenty-five lots;
>>
>> ... [additional categories of exempt agreements not relevant here]

15 U.S.C. § 1702(a). Section 1702(b) confers an exemption *only* from the substantive provisions contained in § 1703(a)(1) and §§ 1704-1707 on, *inter alia*, lots in developments of less than one hundred lots:

> (b) Sale or lease of lots subject to other statutory registration and disclosure requirements

> Unless the method of disposition is adopted for the purpose of evasion of this chapter, the provision requiring registration and disclosure (as specified in section 1703(a)(1) of this title and sections 1704 through 1707 of this title) shall not apply to--
>
>> (1) the sale or lease of lots in a subdivision containing fewer than one hundred lots which are not exempt under subsection (a) of this section;
>>
>> ... [additional categories of exempt agreements not relevant here]

15 U.S.C. § 1702(b).  The building in this case has 32 lots, so it is entitled to the limited exemption contained in § 1702(b), but not the total exemption contained in § 1702(a).  So far, the parties are in agreement.

Section 1703 contains some of the Act's substantive requirements.  Section 1703 is concerned with sales of particular lots within non-exempt developments, while §§ 1704-1707 requires the disclosure of certain information about the development generally.  In particular, § 1703(d) provides that the purchaser of a lot "not exempt under section 1702" shall have a two-year right of revocation if the purchase agreement does not include a description of the lot; a provision ensuring that the seller will give the purchaser notice if the purchaser defaults or breaches the agreement, and the oppportunity to cure the default or breach; and a provision that gives a defaulting purchaser the right to recoup any amount paid over 15% of the purchase price.  Section 1703(d) goes on to say that sales agreements that do not include the required terms are revocable at the option of the buyer for two years following the date of signing of the agreement.

The parties join issue on a single, narrow question: whether an agreement receiving only the limited exemption provided for in 15 U.S.C. § 1702(b) is exempt from the provisions of 15 U.S.C. § 1703(d).

2.      *Discussion*

Plaintiff seeks to invoke the right of revocation described in 15 U.S.C. § 1703(d). Plaintiff argues, although the agreement at issue in this case is entitled to the § 1702(b) exemption, the § 1702(b) exemption does not relieve the defendants of their obligation to comply with the requirements of § 1703(d).  The court finds this argument persuasive, as far as it goes.  Section 1702(b) specifies limited sections of the statute whose disclosure requirements need not be complied with: § 1703(a)(1) and §§ 1704-1707.  Section 1703(d) is not on the list. Therefore, the court agrees that the § 1702(b) exemption itself does not affect defendant's obligations under 1703(d).

However, defendant stresses that 1703(d), by its own terms, is limited in application to agreements "for the sale or lease of a lot not exempt under section 1702 of this title."  15 U.S.C. § 1703(d).  Defendant argues that an agreement receiving the § 1702(b) exemption is "exempt under section 1702," and that § 1703(d) therefore does not apply.  Thus the dispositive question in this matter is whether the § 1703(d)'s phrase "exempt under section 1702" means "receiving *any* exemption under section 1702" or "receiving a *complete* exemption under section 1702."

At the time the motions were filed, the only reported decision on this issue was *Mayersdorf v. Paramount Boynton, LLC*, 910 So.2d 887 (Fla. 4th DCA 2005).  The Florida District Court of Appeal held that 1702(b) agreements were exempt from the requirements of 1703(d).  The court reasoned that because 1703(d) applies only to agreements "not exempt under

7

section 1702," and because the agreement was exempt under 1702(b), 1703(d) was therefore not applicable. Plaintiff concedes that *Mayersdorf* is on point but argues that it was wrongfully decided and should not be followed by this court.

Two days before oral argument in this case, one federal court declined to follow *Mayersdorf.* In *Pugliese v. Pukka Development, Inc.*, 2007 WL 4165395 (S. D. Fla. 2007), the court ruled that 1702(b) developments are subject to 1703(d). The court suggested that 1703(d) does not distinguish between the two types of exemptions contained in section 1702 because it is intended "to refer the reader to where the exemptions are found." *Id.* at *2. The court concluded that "the specific limitations placed on § 1702(b)'s reach [are] an important qualifier whose express terms should not be altered by an all-inclusive reading of § 1703(d)'s exemption reference." *Id.* at *3.

The court is satisfied that the interpretation of the statute advanced by plaintiff, and endorsed by the court in *Pugliese*, is both the most natural way to read the statute and the interpretation which will best serve the statute's intended remedial purpose. Congress was very specific in describing the scope of the § 1702(b) exemption. It specifically listed § 1703(a)(1) and §§ 1704-1707 as the provisions from which agreements receiving the § 1702(b) exemption are excused. If Congress had wanted to excuse § 1702(b) agreements from § 1703(d) as well, it would have been a simple matter to add § 1703(d) to the list. But Congress did not do so. The court is reluctant to exempt § 1702(b) agreements from additional statutory requirements where, as here, Congress has already specified requirements from which those agreements are exempt. *See Allstate Life Ins. Co. v. Miller*, 424 F.3d 1113, 1116 n.3 (11th Cir. 2005) (applying the doctrine of *expressio unis est exclusio alterius*).

8

Defendant's argument is that because § 1703(d) applies only to agreements "not exempt under section 1702," and because it does not distinguish between the two types of exemptions contained in section 1702, § 1703(d) must not apply to an agreement receiving either type of exemption.  But the court finds this argument unpersuasive for two reasons.  First, it would effectively insert § 1703(d) into § 1702(b)'s list of statutory provisions to which it provides an exemption.  As discussed above, the court is disinclined to do so where Congress has shown, by enumerating the specific sections of the statute that do not apply to § 1702(b) agreements, that it has carefully considered and precisely tailored the scope of the § 1702(b) exemption.  Second, defendant's proposed interpretation is simply an awkward way to read the statute.  When a statute limits its own application to agreements that are "not exempt," the natural reading is to interpret it as applying to agreements that are not exempt from the requirements of *that* statute. Defendant reads it as applying only to agreements that are not exempt from the requirements of *any* statute.  Defendant thus interprets § 1703(d) as inapplicable to developments that receive any exemptions at all, from any of the statute's provisions.  Under this theory, section 1702(b)'s exemptions are incorporated into § 1703(d) as a self-imposed limitation, even though § 1702(b) itself does not so provide.  That is a strained and unlikely construction of the statute, and the court declines to adopt it.

Moreover, the court notes that excusing agreements receiving the § 1702(b) exemption from § 1703(a)(1) and §§ 1704-1707, but subjecting them to § 1703(d), is consistent with a common-sense understanding of the statute's operation.   Sections 1704-1707 describe disclosures relating to the subdivision as a whole that must be made to the Secretary of Housing and Urban Development, and to prospective buyers before a sales agreement is reached; section

9

1703(a)(1) explicitly makes it unlawful to conclude a sale of a non-exempt lot if those disclosures are not made, or if those disclsoures contain material misstatements or omissions. By contrast, § 1703(d) provides for disclosure to prospective buyers relating to the particular lot within the subdivision that the developer proposes to sell.  In fact, § 1703(d) provides for more than just disclosure; it gives buyers substantive rights by enumerating certain consumer-protective contract terms that must be included in the sales agreement.  Given the clear differences in focus, it is not at all surprising or strange that agreements receiving the § 1702(b) exemption would be exempt from one set of provisions, but not the other.

Defendant makes an argument that admittedly gives the court pause.  Defendant points out that in another part of the statute, Congress has used the more specific phrase "not exempt under section 1702(a)."  *See* 15 U.S.C. § 1703(a)(2).  According to defendant, this tends to show that Congress meant to distinguish between "not exempt under section 1702" and "not exempt under section 1702(a)," and if the two are to have distinct meanings, it must be that the former refers to agreements receiving either the § 1702(a) exemption or the § 1702(b) exemption.

This argument has some force.  But when § 1703(a)(2) is examined more closely, it becomes clear that § 1703(a)(2) is an anti-fraud provision that tends to stand apart from the disclosure provisions and contractual rights in the rest of the statute.  Section 1703(a)(2) also dates from the Act's original 1968 enactment.  Its limitation to developments "not exempt under section 1702(a)" was not added until 1979 – and that limitation can read equally persuasively as reflecting the statute's consumer-protective purpose, because it suggests that Congress wanted to make especially clear that agreements receiving only the 1702(b) exemption were not exempted from § 1703(a)(2).

10

Finally, to the extent that defendant's argument exposes the statute's ambiguity, the purpose of the statute must guide the court's interpretation. *See U.S. v. Pringle*, 350 F.3d 1172, 1180 n.11 (11th Cir. 2003); *U.S. v. DBB, Inc.*, 180 F.3d 1277, 1283 (11th Cir. 1999). Because the purpose of the Interstate Land Sales Act is to "curb abuses accompanying interstate land sales, *Winter v. Hollingsworth Properties, Inc.*, 777 F.2d 1444, 1448 (11th Cir. 1985), its protections "must be leveled against the fraudulent planners and profit makers for otherwise the Act would be pragmatically barren." *McCown v. Heidler*, 527 F.2d 204, 207 (10th Cir. 1975). Therefore, when faced with an ambiguity regarding the scope of an exemption, the court must interpret the exemption narrowly, in order to further the statute's purpose of consumer protection.

## CONCLUSION

The court concludes that, for the reasons given above, plaintiff's reading of § 1703(d) is correct, and defendant's is mistaken. The court rules that agreements for the sale or lease of lots receiving the exemption provided by 15 U.S.C. § 1702(b) must comply with the provisions of 15 U.S.C. § 1703(d). Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Plaintiff Meridian Ventures, LLC's motion for partial summary judgment [DE # 17] is **GRANTED**.

2. Defendant One North Ocean, LLC's motion for partial summary judgment [DE # 10] is **DENIED**.

11

Order Granting Plaintiff's Motion for Partial Summary Judgment and Denying Defendant's Motion for Partial
        Summary Judgment
Meridian Ventures, LLC v. One North Ocean LLC
Case No. 07-80061-CIV-HURLEY/HOPKINS

       **DONE** and **SIGNED** in Chambers at West Palm Beach, Florida this 14th day of

December, 2007.

                               Daniel T. K. Hurley
                              United States District Judge

*Copies furnished to counsel of record*